IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MAIYURY DIAZ,

        Plaintiff,

                                  CIVIL NO.

v.

SCHOOL BOARD OF PALM BEACH
COUNTY, FLORIDA d/b/a SCHOOL
DISTRICT OF PALM BEACH
COUNTY, FLORIDA

        Defendant.

## COMPLAINT

The Plaintiff, MAIYURY DIAZ, brings this Complaint against Defendant, SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA, d/b/a SCHOOL DISTRICT OF PALM BEACH COUNTY, FLORIDA, for employment discrimination and damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.*, and 29 U.S.C. Section 2601, *et seq.* and alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. Sections 1331 and 1343. This civil action arises under the Constitution and Laws of the United States. Plaintiff is alleging a violation of her rights under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") as amended, and the Family and Medical Leave Act, 29 U.S.C. Section 2601, *et seq*. ("FMLA"). Therefore, this Court has original jurisdiction over this case based on 28 U.S.C. Section 1331.

    2.    Venue is proper under 28 U.S.C. § 1391(b), 42 U.S.C. Section 2000e-5(f)(3) and 29 U.S.C. Section 2601, *et seq*. This Claim arose in all material respects within the State of Florida and County of Palm Beach and all acts complained of therein occurred within Palm Beach County, Florida and within the Southern District of Florida. The employment records relevant to such unlawful practices complained of are maintained and administered in the Southern District of Florida.

## PARTIES

    3.    Plaintiff, MAIYURY DIAZ (hereinafter referred to as "Plaintiff"), is a resident of Palm Beach County, Florida.

    4.    At all times material herein, SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA d/b/a SCHOOL DISTRICT OF PALM BEACH COUNTY, FLORIDA (hereinafter referred to as "SCHOOL DISTRICT") has been and is a School District, created and existing pursuant to Article IX, Section 4 of the Constitution of the State of Florida and Chapter 228 of the Florida

Statutes, with its principal business within the State of Florida, and it meets the definition of "employer" set forth in 42 U.S.C. Sections 2000e(b) and (h).

## PROCEDURAL REQUIREMENTS

5.    On or about June 11, 2011, Plaintiff filed a timely Charge of Discrimination that satisfied the requirements of 42 U.S.C. Section 2000e-5 with the Equal Employment Opportunity Commission ("EEOC").   A copy of the Charge of Discrimination is attached hereto as **Exhibit "A"** and the statements contained therein are incorporated herein by reference.

6.    On September 4, 2012, the EEOC issued a Letter of Determination regarding the Charge filed by Plaintiff.   The EEOC made a cause determination, finding reason to believe that Defendant discriminated against Plaintiff based on her gender.

7.    On or about December 27, 2012, the EEOC issues a Dismissal and Notice of Right to Sue, stating that Plaintiff, MAIYURY DIAZ, could file a civil action under Title VII of the Civil Rights Act of 1964, as amended, within ninety (90) days from the receipt of such Notice.   Plaintiff, MAIYURY DIAZ, received a copy of such Notice on or about January 4, 2013.   Plaintiff filed this Complaint within ninety (90) days after the date on which she received such Notice of Right to Sue.   Attached as **Exhibit "B"** is the Notice.

## GENERAL FACTUAL ALLEGATIONS REGARDING
## PLAINTIFF'S EMPLOYMENT

8.     Plaintiff is a female who began her employment with Defendant on or about June 14, 2000.

9.     Plaintiff began her employment with Defendant as a Human Resources Technician in 2000.

10.    When she was subject to the illegal practices giving rise to the claims in this lawsuit, Defendant employed Plaintiff as a Confidential Secretary II with the Central Area Superintendent Office of Defendant.

11.    Confidential Secretaries are contract employees hired to 2-year employment agreements with Defendant, subject to reappointment.

12.    As a Confidential Secretary, Plaintiff had a 2-year employment contract with Defendant that expired on June 30, 2011.

13.    In his capacity as Central Area Superintendent of Defendant, Rodney Montgomery (hereinafter referred to as "Montgomery") was Plaintiff's direct supervisor.

14.    Montgomery had the authority to fire or to recommend firing Plaintiff.

15.    Montgomery recommended and directly made employment-related decisions and took tangible employment actions affecting Plaintiff.

4

16.     Montgomery had the authority to direct Plaintiff's daily work activities.

17.     Plaintiff was qualified for her position as a Confidential Secretary.

18.     For example, Defendant's written work evaluations of Plaintiff for 2010 and 2011 were satisfactory with no Development Needs ratings.

19.     Defendant employed Gustavo Betzer (hereinafter referred to as "Betzer") as a Confidential Secretary with the Central Area Superintendent Office of Defendant.

20.     As a Confidential Secretary, Betzer had a 2-year employment contract with Defendant that expired on June 30, 2011.

21.     In his capacity as Central Area Superintendent of Defendant, Montgomery was Betzer's direct supervisor.

22.     Montgomery had the authority to fire or to recommend firing Betzer.

23.     Montgomery recommended and directly made employment related decisions and took tangible employment actions affecting Betzer.

24.     Montgomery had the authority to direct Betzer's daily work activities.

25.     Plaintiff and Betzer are similarly situated in all relevant aspects for the purposes of Plaintiff's action against Defendant.

26.     For example, Plaintiff and Betzer were similarly situated Confidential Secretaries, Type II, supervised by Montgomery.

27.   As another example, Plaintiff and Betzer were similarly situated Confidential Secretaries, with 2-year employment contracts with Defendant that expired on or about June 30, 2011.

## INITIAL FACTUAL ALLEGATIONS IN SUPPORT OF
## PLAINTIFF'S GENDER DISCRIMINATION CLAIM

28.   On or about April 29, 2011, Montgomery informed Plaintiff her job position was being eliminated due to budget issues and therefore, Plaintiff would not be reappointed to her position as a Confidential Secretary for Rodney Montgomery after her contract terminated on June 30, 2011.

29.   On or about April 29, 2011, Montgomery informed Betzer that Defendant would not reappoint Betzer after his contract terminated on June 30, 2011.

30.   Approximately one week after being informed Defendant would not be reappointing her due to budget cuts, Plaintiff saw an article in The Palm Beach Post ("PBP Article") dated May 5, 2011, regarding budget cuts Defendant was making.

31.   To Plaintiff's surprise, the PBP Article dated May 5, 2011, indicated each of the Defendant's area superintendent offices were keeping one Confidential Secretary, which was contrary to Rodney Montgomery's representations.   See Article attached hereto and incorporated herein as **Exhibit "C"**.

6

32.    On or about May 5, 2011, Plaintiff spoke with Montgomery in person in his office regarding the PBP Article.

33.    Montgomery stated that he had two Confidential Secretaries: one who had all the skills (i.e., Plaintiff) and another who had no skills, but was at work every day (i.e., Gustavo Betzer).

34.    Montgomery stated that he could not count on Plaintiff because he had put up with her two pregnancies.

35.    Montgomery also stated that he could not rely on Plaintiff because he needed someone who was always in the office.

36.    Montgomery further stated that Plaintiff used to "shine," and that Plaintiff no longer "shone" when she walked into the office.

37.    At approximately the same time Defendant informed Plaintiff that she would not be reappointed as a Confidential Secretary, Defendant informed Betzer that he would not be reappointed as a Confidential Secretary.

38.    Betzer possessed significantly less work experience than Plaintiff.

39.    Montgomery recommended that Betzer be reinstated and placed in another position with Defendant.

40.    On or about June 1, 2011, Defendant reinstated and placed Betzer in another position with Defendant.

41. Defendant reinstated and placed Betzer at Barton Elementary School as the Confidential Secretary of the school for the principal.

42. Prior to the expiration of her 2-year contract on June 30, 2011, Plaintiff informed Montgomery that she would like to be reinstated and reassigned to another position with Defendant.

43. Defendant did not reinstate and reassign Plaintiff.

44. On or about June 8, 2011, Plaintiff became aware of a job posting for a Confidential Secretary position with Defendant.

45. On or about June 8, 2011, Plaintiff applied for the Confidential Secretary position with Defendant.

46. On or about June 8, 2011, Plaintiff emailed Mr. Montgomery's executive secretary, Christine Logan to inform her Plaintiff applied for the Confidential Secretary position with Defendant.

47. Defendant did not interview Plaintiff for the Confidential Secretary position posted on or about June 8, 2011.

48. Defendant did not offer Plaintiff the Confidential Secretary position posted on or about June 8, 2011.

49. Plaintiff's contract expired on June 30, 2011, and Plaintiff's employment with Defendant was terminated.

**COUNT I**

8

## CLAIM FOR GENDER DISCRIMINATION UNDER TITLE VII

50.   Title VII prohibits discrimination on the basis of gender.

51.   Therefore, as a female, Plaintiff is a member of a class that is protected under Title VII.

52.   Plaintiff was qualified for the Confidential Secretary position.

53.   Plaintiff was qualified for the school secretary position to which Betzer was placed after being reinstated.

54.   Plaintiff was qualified for other school secretary and/or comparable positions with Defendant.

55.   Prior to the end of Betzer's contract, Defendant reinstated Betzer and placed him in a school secretary position.

56.   Even though Plaintiff was more qualified than Betzer, Defendant did not reinstate Plaintiff and place her in a school secretary or comparable position.

57.   Therefore, Plaintiff suffered the adverse employment action of being terminated rather than being reinstated and placed in a comparable position.

58.   Betzer, who is outside of Plaintiff's protected class, was similarly situated to Plaintiff in all relevant aspects.

59.   Because Defendant reinstated and placed Betzer in a school secretary position but did not reinstate and place Plaintiff in a school secretary or

comparable position, Plaintiff suffered from a different application of work and/or disciplinary rules on the basis of her gender.

60.  Therefore, Defendant's termination of Plaintiff and failure to reinstate and place Plaintiff in a comparable position violated Title VII.

61.  Defendant engaged in intentional gender discrimination in the terms and conditions of Plaintiff's employment, including, but not limited to, pay, positions, benefits, demotions, harassment, and her termination.

62.  As a direct and proximate result of Defendant's intentional discrimination against Plaintiff on the basis of her gender, Plaintiff has suffered and will continue to suffer damages, including loss of past and future income and employee benefits, mental anguish, emotional distress, humiliation, embarrassment, and other damages, and, therefore, Plaintiff is entitled to recover these damages and/or other compensatory damages from Defendant in an amount to be determined by a jury.

63.  Defendant intentionally discriminated against Plaintiff on the basis of her gender with reckless disregard or deliberate disregard for the rights and safety of Plaintiff.   As a result, Plaintiff is entitled to punitive damages against Defendant in an amount to be determined by a jury.

64.  Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim.

## COUNT II

## CLAIM FOR RETALIATION
## FOR TAKING LEAVE IN VIOLATION OF THE FMLA

65.    Defendant is an employer covered by the FMLA.

66.    On or about June 13, 2011, Plaintiff requested leave due to mental health issues.

67.    Thus, Plaintiff engaged in conduct protected by the FMLA (i.e., requesting FMLA-protected leave).

68.    In support of her request, Plaintiff's father took the medical documentation from her doctor that indicated that she was unable to work through June 30, 2011, due to mental health issues and personally hand delivered the same to Montgomery's executive secretary at his office.

69.    Defendant granted Plaintiff her request and did not request any further documentation.

70.    On or about June 13, 2011, Plaintiff went on leave.

71.    Thus, Plaintiff engaged in conduct protected by the FMLA (i.e., taking FMLA-protected leave).

72.    On June 30, 2011, Plaintiff's contract expired, and Plaintiff was terminated.

73.    Plaintiff was not reinstated and placed in a comparable position.

11

74.     Therefore, Plaintiff suffered an adverse employment action.

75.     Defendant reinstated and placed Betzer in a comparable position, who did not take FMLA-protected leave, but did not reinstate and place Plaintiff, who took FMLA-protected leave, in a comparable position.

76.     Further, in response to Plaintiff's Charge of Discrimination, Defendant stated that "Mr. Montgomery would have continued to try to help Charging Party find a position if she stayed at work until the end of her contract. However, because Charging Party took sick leave until the end of her contract, making her unavailable for transfer during her contract, Mr. Montgomery felt that he could not recommend her for any positions."

77.     Defendant's treatment of Betzer and its admission demonstrate there was a causal connection between Plaintiff's protected conduct (requesting and taking leave) and the adverse employment action that Plaintiff suffered (i.e., not being reinstated and placed in a comparable position).

78.     Thus, Defendant improperly retaliated against Plaintiff for engaging in activity protected by the FMLA.

79.     As a direct and proximate result of Defendant's intentional retaliation against Plaintiff on the basis of her engaging in activity protected by the FMLA, Plaintiff has suffered and will continue to suffer damages, including loss of back pay and benefits.

12

80.    Further, Plaintiff is entitled to recover an amount equal to back pay in "liquidated damages" because Defendant did not act in good faith in retaliating against Plaintiff and did not have reasonable grounds for believing it had not violated the law.

81.    As a direct and proximate result of Defendant's intentional retaliation against Plaintiff on the basis of her engaging in activity protected by the FMLA, Plaintiff has suffered and will continue to suffer additional damages, including loss of future pay and benefits.

82.    Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim.

### PRAYER FOR RELIEF

Based on the allegations set forth in this Complaint and the evidence as it is developed in this case, Plaintiff respectfully prays that:

- the Court enter judgment in favor of Plaintiff;

- the Court award Plaintiff compensatory damages, punitive damages, and any and all other damages as provided under the law;

- the Court award Plaintiff her attorney's fees and litigation costs as provided under the law; and

13

- the Court grant Plaintiff all other further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  March 29, 2013

Respectfully Submitted,

Linette M. Waterman
Counsel for Plaintiff
Waterman and Wolfe, P.A.
2090 Palm Beach Lakes Blvd.,
Suite 205
West Palm Beach, Florida 33409
Telephone: 561-697-2644
Facsimile: 561-697-2647
Florida Bar No. 0080985
Waterman@watermanandwolfe.com

14

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 510-2011-04403 |

Florida Commission On Human Relations

*State or local Agency, if any*

and EEOC

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Maiyury Diaz | (561) 313-3024 | 10-03-1972 |

| Street Address | City, State and ZIP Code |
|---|---|
| 143 Lake Arbor Dr., Lake Worth, Fl. 33461 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| THE SCHOOL DISTRICT OF PALM BEACH COUNTY | 500 or More | (561) 804-3245 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4703 10th Ave. North, Greenacres, Fl. 33463 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 05-03-2011 | 06-08-2011 |

☐ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):

I. I have been notified by the Superintendent that I will be not reappointed to the position of Confidential Secretary II because of my pregnancies that I had in the past.

II. On April 28th, 2011, Rodney Montgomery, Central Area Superintendent, informed me that I was being laid-off effective June 30th, 2011, as a result of budget cuts. The following week, The Palm Beach Post published an article stating that the Four Area Superintendents' Offices were left with 1 Confidential Secretary and that those positions were not impacted by the budget. When I approached Mr. Montgomery with this article he stated that he had two secretaries, me, who had all the skills and another, who had no skills, but was at work everyday, Mr. Montgomery further stated that he put up with two pregnancies from me and that he could not rely on me. Mr. Montgomery placed Gustavo Betzer, Confidential Secretary II, at another location even though he had less experience than me. On June 8th, 2011, my job, Confidential Secretary II was posted even though I was being "laid-off" due to budget cuts.

III. I believe the Respondent discriminated against me because of my sex, Female, and a condition related to my sex, Pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Jun 13, 2011 | |
| Date       Charging Party Signature | |

Exhibit "A"

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.  FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (11/09).

2.  AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.  PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.  ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.  WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**U.S. Department of Justice**

Civil Rights Division

TEP:KDW:KLF:jw
DJ 170-17M-0

*Employment Litigation Section - PHB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*www.usdoj.gov/crt/emp*

**DEC 27 2012**

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL 2015 5428
RETURN RECEIPT REQUESTED

Ms. Maiyury Diaz
143 Lake Arbor Drive
Lake Worth, FL 33461

Re:     Maiyury Diaz v. The School District of Palm Beach
        County, EEOC Charge No. 510-2011-04403

Dear Ms. Diaz:

Because you filed the above charge with the Equal Employment Opportunity Commission, and conciliation on that charge has failed, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., against the above-named respondent. This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

Therefore, you should consult an attorney of your own choosing at your earliest convenience. If you are unable to locate an attorney, you may wish to contact the EEOC, or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of Title VII, 41 U.S.C. 2000e-5(f)(1).

We are returning the files in this matter to EEOC's Miami District Office. If you or your attorney have any questions concerning this matter or wish to inspect the investigative file, please feel free to address your inquiry to: Malcolm S. Medley, District Director, EEOC, 2 South Biscayne Blvd., Ste. 2700, Miami, FL 33131.

Sincerely,

Thomas E. Perez
Assistant Attorney General
Civil Rights Division

By:

Karen D. Woodard
Deputy Chief
Employment Litigation Section

cc:   The School District of Palm Beach County
      Shawn N. Bernard, Esquire
      EEOC, Miami District Office

Exhibit "B"

Follow us on

•
•

Wednesday, March 13, 2013 | 5:31 p.m.

Subscribe | Today's paper | Customer care

Sign In | Register

# The Palm Beach Post

Breaking news starts here

|                                    | Search |
|------------------------------------|--------|

◉ Site ○ Web
Web Search by YAHOO!

Updated: 6:02 a.m. Thursday, May 5, 2011 | Posted: 5:08 p.m. Wednesday, May 4, 2011

# School district debates cuts of $33.5 million in next year's budget

### Related

By Jason Schultz

Palm Beach Post Staff Writer

**BOCA RATON** — The school board and its advisory committee got their first look Wednesday at the complete proposed budget for the next school year, with about $33.5 million in cuts.

The advisory committee, followed by the school board, will spend the next month examining those cuts.

"It's a system-wide problem," board Chairman Frank Barbieri said of the district's budget woes. "It will take a system-wide solution."

Chief Financial Officer Mike Burke said that after the legislature completed its proposed budget late Tuesday, it appeared state money for education could be cut about 8 percent. The loss to the district will be about $92 million in state money, with millions more in federal stimulus money also no longer available .

Board member Chuck Shaw called the cuts to state education money the worst since the state funding system was created in 1973.

To try to make up those losses, the district plans to use federal grants and money from the sale of property associated with Palm Beach Public School. Burke said.

Much of the lost stimulus money is being offset by the 3 percent contribution the state is requiring employees to make to their retirement funds.

The district expects a $35.4 million budget shortfall, Burke said. The budget recommendations from Superintendent Bill Malone call for eliminating at least 766 positions. Most of the proposed layoffs are in support departments such as police officers, painters, psychologists, non-classroom teachers and custodians.

Malone proposed laying off 244 school monitors and 23 high school secretaries as well as cutting 10 positions at alternative schools such as the district's program at the Department of Juvenile Justice's detention center for juvenile offenders. Burke said the cuts amount to a reduction of less than 1 percent of the overall budgets at the schools.

"This is a pretty good effort to keep the schools as held harmless as possible," Burke said.

The school board will hold a budget workshop on June 1, Burke said.

Barbieri said he's looking at ways to spread the burden across the entire district, such as employee furloughs.

Malone has said that he hopes many of the laid-off employees can fill other vacant district jobs .

Exhibit " C "

In other business, the school board listened to a report on projections for enrollment growth and school capacity issues through the 2015-16 school year. District officials estimated that enrollment would grow by about 5,600 students in that time - 2,400 in elementary school, 1,100 in middle school, 1,600 in high school and the rest in other programs.

## More News

### We Recommend

- Jupiter man accused of punching waiter outside Clematis Street restaurant on New Year's Eve (PalmBeachPost.com)
- Police find Boynton woman passed out, charge her with child neglect (PalmBeachPost.com)
- Incumbent Delray Beach mayor releases set of charges against opponent (PalmBeachPost.com)
- Three charter schools face expulsion in Palm Beach County (PalmBeachPost.com)
- Bondi wants bodies exhumed on boys school property (PalmBeachPost.com)
- Ethan Skolnick: 'The Birdman' could help Miami Heat overcome Memphis Grizzlies' big men (PalmBeachPost.com)

### From Around the Web

- The Average Salary of a SWAT Officer (eHow)
- Deborah Norville: "Devastated" By Rheumatoid Arthritis (Lifescript.com)
- These Banks Are Likely to Fail This Year (MyBankTracker.com)
- What's Going to Replace Stainless Steel Appliances (Oven Info)
- Report: Jennifer Capriati arrest warrant sought (SI.com)
- Worst drinks for your body (Shape Magazine)

## Comments

If you would like to post a comment please Sign in or Register

http://www.palmbeach.k12.fl.us/agenda/Wednesday,%20June%2001,%202011%20Budget%20Worksho
p/19FE3F7E-D749-4290-9E7D-BB9C419A5985.pdf